Filed 6/9/26  P. v. Styles CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAYMOND KENNETH STYLES,<br><br>    Defendant and Appellant. | F089077<br><br>(Super. Ct. No. BF114746A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Anna J. Benham, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Peña, J. and Harrell, J.

In 2007, defendant Kenneth Raymond Styles was sentenced to an aggregate term of 201 years to life, which included 2 one-year prior prison term enhancements and four firearm enhancements.  Following enactment of Penal Code[1] section 1172.75, the trial court recalled his sentence and imposed an aggregate term of 165 years to life.  All four firearm enhancements were reimposed.

On appeal, defendant argues that the trial court failed to exercise informed discretion under section 1385 when it reimposed the firearm enhancements.  The People disagree.  We affirm.

### PROCEDURAL HISTORY AND BACKGROUND

**I.      Charges, Verdict, and Sentence**

In defendant's direct appeal, *People v. Styles* (Jan. 12, 2009, F054133) [nonpub. opn.] (*Styles*),[2] we summarized the procedural background regarding the charges, verdict, and sentence as follows:

> "On May 1, 2007, the Kern County District Attorney filed a consolidated second amended information in superior court charging appellant as follows:
>
> "Counts 1 and 2—first degree robbery (Pen. Code, §§ 212.5, subd. (a), 1192.7, subd. (c)(19)) with personal use of a firearm (§§ 12022.53, subd. (b), 12022.5, subd. (a)).
>
> "Count 3—first degree burglary (§§ 460, subd. (a), 1192.7, subd. (c)(18)) with personal use of a firearm (§ 12022.5, subd. (a)).
>
> "Counts 4 and 5—kidnapping (§§ 207, subd. (a), 1192.7, subd. (c)(20)) with personal use of a firearm (§§ 12022.53, subd. (b), 12022.5, subd. (a)).
>
> "Counts 6 and 7—false imprisonment (§ 236) with personal use of a firearm (§ 12022.5, subd. (a)).

---

[1]      All further undesignated statutory references are to the Penal Code.

[2]      On October 3, 2025, we granted defendant's request for judicial notice of the appellate record in *Styles*, *supra*, F054133.

"Counts 8 and 9—assault with a firearm (§§ 245, subd. (a)(2), 1192.7, subd. (c)(8)) with personal use of a firearm (§ 12022.5, subd. (a)).

"Counts 10 and 11—first degree burglary (§§ 460, subd. (a), 1192.7, subd. (c)(18)).

"Two prior strike convictions (§§ 667, subds. (c)[–](j), 1170.12, subds. (a)[–](e)), two prior serious felony convictions (§ 667, subd. (a)), and four prior prison terms (§ 667.5, [former] subd. (b)) were alleged as to each count.

"Jury trial commenced on May 2, 2007. On May 17, 2007, [defendant] waived his right to a jury trial of the enhancement allegations involving prior convictions. On the same date, the jury returned verdicts finding [defendant] guilty of counts 1, 3, 6, 7, 8, 9, and 11 and not guilty on counts 2, 4, [and] 5. The jury found the personal use allegations relating to counts 1, 6, 7, 8, and 9 to be true. The jury was unable to reach a verdict on count 10. The trial court conducted a bifurcated hearing and found all of the prior conviction allegations thereafter to be true.

"On October 26, 2007, the [trial] court sentenced [defendant] to a total indeterminate term of 129 years to life and a total determinate term of [7]2 years. On motion of the district attorney, the court dismissed count 10." (*Styles*, *supra*, F054133, fns. omitted.)

## II.  Factual Summary from *Styles*

In, *Styles*, *supra*, F054133, our court also summarized the facts related to the convictions. We provide that factual summary here.

### "Count 11/Burglary of the Collins Residence

"[Donald C.] a resident of Harvard Drive in Bakersfield, left his home on the afternoon of April 23, 2006. When he returned home, he found the garage door forced open and the lock punched out. [Donald C.] noted a number of items missing from his residence. These items included DVD players, videocassette recorders, a television, compact disks, personal jewelry, audio books, travel bags, an antique sewing machine, a broom, and Chinese zodiac figurines. [Donald C.] said he did not know [defendant] or give him permission to enter his home.

"On April 24, 2006, Bakersfield Police Officer Lynn Martinez found a beer mug in a bedroom of … [Donald C.'s] residence and dusted it for fingerprints. One of the prints matched [defendant's] left index finger.

3.

Bakersfield Police Detective Glen Anderson interviewed [defendant] in custody on May 15, 2006. [Defendant] waived his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 and told Anderson he had been staying with [E.Z.] and [C.Z.] on Cottonwood Road in Bakersfield. [Defendant] told the detective, 'I am not innocent.' As to the fingerprints in the [Donald C.] home, [defendant] said, ' "It just can't be. It must be a mistake." '

"Anderson went to [E.Z. and C.Z.'s] apartment and searched a bedroom that he thought belonged to [defendant]. Anderson located a Tom Clancy CD-audio book inside that room and Chinese zodiac figurines in the living room of the apartment. [Donald C.] later identified these items as his property.

**"Counts 1[through]9/Robbery of the [E.] Household**

"On May 13, 2006, [Patricia E.] and her son lived on Panorama Drive in Bakersfield. At 9:00 a.m. two young men pounded on their front door and demanded entry. [Patricia E.] opened the door and saw a Caucasian male and a Hispanic male. The White male grabbed her arms and demanded to know the location of money. He also pointed a gun in her face. [Patricia E.] went to the dining room and pulled out a bag containing $12,000 in cash. The Hispanic male put the cash in a backpack.

"[Patricia E.'s] son was in a pool room near the garage of the residence. The son was age 46 and suffered from Down [s]yndrome. The White male went to the pool room and brought [Joe E.] to the dining room. [Patricia E.] gave the Hispanic male her Seiko watch and the White male pulled the wedding ring from her swollen finger. The Hispanic male then tied her up with a sheet and the White male took her car keys. The two assailants ran out the front door. [Joe E.] untied his mother and she called the police.

"After police arrived at the scene, [Patricia E.] gave them a description of the two suspects. A police artist prepared a drawing of the White male suspect but [Patricia E.] said it was only 60 percent accurate. Kern County Deputy Sheriff Dean Marshall compiled a photographic lineup of six men that included a picture of [defendant]. On May 18, 2006, he showed the photographic lineup to [Patricia E.] and she identified [defendant's] picture as that of the White male suspect. She subsequently identified [defendant] in court as the White male suspect.

"Sometime after the robbery, law enforcement officers returned a watch and wedding ring to [Patricia E.] and she identified them as property that had been taken in the robbery. On May 15, 2006, [defendant's] parole

4.

agent placed him under arrest.  The agent searched [defendant's] room in an apartment he shared with several other people.  The agent recovered marijuana and a pipe from [defendant's] room.  While the agent placed [defendant] under arrest, [defendant] gave a watch to his fellow resident, [C.Z.]

"[R.S.]  knew [defendant] and his apartment mates, [C.Z.] and [E.Z.].  [R.S.] saw [defendant] on May 13, 2006.  He seemed to be in a hurry and gave her a ring to sell.  [R.S.] sold the ring to a local jeweler for $480 in cash.  Sometime later, police officers contacted [R.S.] about the ring and she took them to the jewelry store where she had made the sale.  At that point, the jeweler had already dismantled the ring she sold to him.

"On May 17, 2006, [defendant] was in court, contacted a deputy sheriff, and told him he wanted to speak privately with him.  [Defendant] told the deputy he wanted leniency and that he had information about a recent home invasion robbery.  The deputy told him the information would have to be unique because the crime had been reported in the news.  [Defendant] told the deputy the victim was a woman with a 'retarded son' and the suspects used a bed sheet to tie up the woman.  [Defendant] also told the deputy the suspects were a Hispanic man named Manuel and Manuel's brother-in-law, a White male.  [Defendant] also reported that both suspects were armed with .45-caliber semiautomatic handguns.  [Defendant] also said the two men took a wedding ring off of the woman's finger and $15,000 cash during the robbery.  Upon questioning by the deputy, [defendant] said he had been at a 'drug party' when Manuel told him about the robbery."  (*Styles*, *supra*, F054133.)

## III.    Resentencing Pursuant to Section 1172.75

Defendant filed multiple sentencing statements prior to the resentencing hearing.  Defendant asserted he participated in rehabilitative activities, and he submitted evidence in support of this assertion.  Pursuant to section 1385, he asked the court to strike all prior serious felony enhancements and all but one of the firearm enhancements.  He also asked the court to strike one of his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  The prosecutor did not file a response.

The trial court held the resentencing hearing on December 13, 2024.  At the hearing, defendant asked the court to strike both of his prior strike convictions, all but one of the firearm enhancements, and all prior serious felony enhancements.  The

prosecutor conceded that the court should strike the now-invalid prior prison term enhancements, but he argued the court should otherwise reimpose the same sentence.

The trial court ruled as follows:

"[D]efendant I don't think is the same person he was back at the time this crime as committed. This was 2006. But in 2006, the crime he committed was luckily, you know, … no injuries, but the terror and tra[u]ma suffered by the older mother and her 46-year-old son being taken around the house at gunpoint, you know, very horrific. I don't have any additional information from them, but I can't imagine the amount of tra[u]ma that caused them, and they could still be suffering from that. And as the [prosecutor] pointed out, … defendant was 40 years old when he decided to terrorize this older woman and her son. There were two males, armed with at least one firearm that got stuck in the woman's face, and they went around robbery [sic] her. So a very, very, serious crime. His rap sheet is not good as everybody knows. It looks like it starts in 1986, and unfortunately it starts with drugs. And I'm concerned that as recently a[s] six years ago he's got drug paraphernalia. That does seem to cause a lot of problems with future violence in crime and theft crimes, but I'll come back to that in a minute. 1986, he's got a false identification to a police officer and fighting in public. 1986, it looks he goes to prison for a [health and safety code section] 11377[, subdivision] (a). I'm going to give that very little weight. It is currently a misdemeanor. It would not be a prison sentence, but it does seem to indicate the problem with narcotics…. It does look like in 1989, he violated his parole. It appears he had a parole violation in 1990. 1992, a parole violation, and he gets convicted of a [section] 245 [, subdivision] (a)(2) assault firearm on a person [sic] in San Bernardino and went prison for three years. He didn't do three years because in 1994 he's got violation of parole. 1995, he's got a misdemeanor battery out of San Bernardino. And in 1995, he's got … another parole violation. 1989, he's convicted of a robbery. 1997, a parole violation. 1998, a parole violation. 1998, five years prison on a robbery…. 2002, he's got a [vehicle code section] 10851. 2004, another … violation [of] parole. 2005, another violation of parole…. [¶]…[¶]

"… With regards to [c]ount 1, Penal Code [s]ection 212.5[, subdivision] (a), I'm going to deny the request for *Romero*. I do believe the seriousness of the crime charged and his criminal record doesn't merit a grant of *Romero*. Although I did give it consideration given the amount of progress he made since, but I'll come back to that again in a moment. Probation is denied. [D]efendant is sentenced to the Department of Corrections for the

term prescribed by law of 2[5] years to life. I will enhance that by 10 years pursuant to [section] 12022.53[, subdivision] (b) of the Penal Code. I'm doing that because you had an elderly woman and her Down syndrome son having a gun stuck in their face, two separate victims, and I think that is … horrific conduct that should not be ignored and is not mitigated by the efforts, but, again, I'll come back to that. That will be enhanced by 10 years pursuant to [section] 12022.5[, subdivision] (a). That enhancement will be stayed pursuant to 654 of the Penal Code until successful completion of the sentence above and then permanently thereafter. When it comes to the [section] 667[, subdivision] (a)s, those are the same priors as the *Romero*, same conduct. And as [defense counsel] pointed out, there was some time. I'm going, over the [prosecutor's] objection, going to strike the additional 10 years…. As I mentioned, [defendant] has made significant strides to improve himself[,] and Legislature [*sic*] does indicate that I need to give that great weight, and I'm doing so. That will reduce his sentence by 10 years. [¶]…[¶]

" … Count 6, term prescribe[d] by law [of] 25 years to life[,] enhanced by 10 years pursuant [to section] 12022.5[, subdivision] (a) of the Penal Code. That is served consecutive to the sentence imposed in [c]ount 1…. Count 7, probation is denied. [D]efendant is sentenced to the Department of Corrections for 25 years to life[,] enhanced by 10 [years] pursuant to [section] 12022.5[, subdivision] (a)[,] consecutive to the sentence imposed in [c]ount 6…. Count 9, a [section] 245[, subdivision] (a)(2) with two strike priors. Probation is denied. [D]efendant is sentenced to the Department of Corrections for the term prescribed by … law [of] 25 years to life[,] enhanced by 10 years under 1202.25 (a) [*sic*]. Striking the 10 years under [section] 667[, subdivision] (a). Said sentenced serve consecutive [*sic*]to the sentence imposed in [c]ount 7…. Count 11, a [section] 465[, subdivision] (a) with two strike priors. Probation is denied. [D]efendant is sentenced to 25 years to life …. The second enhancement of 10 years is stricken[,] consecutive to [c]ount 9."

The court also struck the prior prison term enhancements and stayed the sentences on counts 3 and 8 pursuant to section 654. Ultimately, defendant was sentenced to an aggregate term of 165 years to life.

## IV.    Current Appeal

On December 17, 2024, defendant timely filed a notice of appeal. On appeal, he argues that the trial court failed to exercise informed discretion under section 1385 when it reimposed the firearm enhancements.

## DISCUSSION

### I. Section 1172.75

The Legislature passed Senate Bill No. 136 (2019–2020 Reg. Sess.), effective January 1, 2020, which amended section 667.5, subdivision (b) to limit prior prison term enhancements to sexually violent offenses as defined in the Welfare and Institutions Code. (Stats. 2019, ch. 590, § 1; § 667.5, subd. (b); *People v. Lopez* (2019) 42 Cal.App.5th 337, 340–341.) The Legislature subsequently passed Senate Bill No. 483 (2021–2022 Reg. Sess.), which made this change retroactive by adding section 1171.1 (Stats. 2021, ch. 728, §§ 1, 3), which was later renumbered as section 1172.75 (Stats. 2022, ch. 58, § 12).

Under section 1172.75, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a).) Once a trial court has confirmed that a defendant's current judgment includes a prior prison term enhancement that is now legally invalid, it "shall recall the sentence and resentence the defendant." (*Id*., subd. (c).) When resentencing the defendant, the court "may consider postconviction factors" (*id.*, subd. (d)(3)), and "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id.*, subd. (d)(2)).

### II. The Record Shows the Trial Court Exercised Informed Discretion

#### A. *Legal Standards*

On January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) went into effect, amending section 1385 "to specify factors that the trial court must consider when

deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)

Section 1385, subdivision (c)(1), provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2), provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." As relevant here, section 1385, subdivision (c)(2)(B) provides that, when "[m]ultiple enhancements are alleged in a single case," "all enhancements beyond a single enhancement shall be dismissed."

"[A]bsent a finding that dismissal would endanger public safety, a [trial] court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1038.)

Trial courts have discretion, pursuant to section 1385, to dismiss firearm enhancements imposed under sections 12022.53 and 12022.5. (§§ 12022.53, subd. (h), 12022.5, subd. (c).)

**B.** *Standard of Review*

A trial court's decision not to dismiss an enhancement pursuant to section 1385, subdivision (c) is reviewed for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Additionally, "an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) Finally, "[w]hen being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it." (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

**C.** *Analysis*

According to defendant, the trial court failed to exercise informed discretion under section 1385 when it reimposed the firearm enhancements. Even assuming this claim was not forfeited, it fails on the merits. The record shows that the trial court was aware of, and exercised, its discretion in this regard.

As defendant admits, he placed the issue directly before the trial court. In his sentencing brief filed on December 5, 2023, he asked the court to dismiss all but one firearm enhancement pursuant to section 1385. He reiterated this request at the resentencing hearing. And, at the hearing, the court stated it considered the December 5, 2023 sentencing brief and ultimately addressed this request. Prior to imposing the sentence, the court stated: "[Defendant's] rap sheet is not good as everybody knows. It looks like it starts in 1986, and unfortunately it starts with drugs. And I'm concerned that as recently [as] six years ago he's got drug paraphernalia. That does seem to cause a lot of problems with future violence in crime and theft crimes, but I'll come back to that in a minute." Then, right after imposing the firearm enhancement on count 1, the court

explained: "I'm doing that because you had an elderly woman and her Down syndrome son having a gun stuck in their face, two separate victims, and I think that is … horrific conduct that should not be ignored and is not mitigated by the efforts, but, again, I'll come back to that."

Thus, the trial court explicitly considered defendant's future dangerousness, a key inquiry when deciding whether to dismiss an enhancement pursuant to section 1385. (See *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 227–231.) The trial court also appears to have explained why it was otherwise not in the interest of justice to dismiss the firearm enhancements.[3]

In sum, the issue was placed squarely before the court and the court conducted an individualized analysis. Therefore, the record demonstrates the court exercised informed discretion when it declined to strike the firearm enhancements.[4]

Defendant's arguments to the contrary are not persuasive. According to defendant, the trial court erred by relying on section 654 to stay the section 12022.5, subdivision (a) firearm enhancement attached to count 1, rather than relying on

---

[3]    It is not clear that the trial court ever continued its future dangerousness analysis or its interest of justice analysis, as it said it would. However, to the extent defendant is arguing that the trial court should have articulated additional reasoning on the record, that claim is forfeited. (*People v. Scott* (2015) 61 Cal.4th 363, 406 [" 'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." ' "].)

[4]    Even if the record were ambiguous, the result would be the same. "[T]o the extent the record is ambiguous, the court is presumed to have properly performed its official functions in the absence of evidence to the contrary. Under that presumption, the court is presumed to have been aware of and followed the applicable law." (*People v. Barber* (2020) 55 Cal.App.5th 787, 814; see also *People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law' "].)

section 12022.53, subdivision (f).  According to defendant, this shows "that the firearm enhancements were treated in a mechanical fashion rather than through [an] individualized, discretionary analysis."  While defendant appears to be correct that the court relied on the wrong section when it stayed the enhancement (see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1123, fn. 5), this does not in any way show the court did not understand or utilize its discretion when considering whether to dismiss the firearm enhancements.

Defendant also notes that the trial court stated it felt "somewhat in the dark compared to … a trial [j]udge," and that it "[did] not have all the trial information."  According to defendant, "that acknowledgment underscores the absence of a reasoned, enhancement-specific discretionary analysis[.]"  We disagree.  The fact that the court acknowledged it would have had more information if it had conducted the trial does not in any way show that it did not understand or utilize its discretion when considering whether to dismiss the firearm enhancements.

Accordingly, defendant's argument that the trial court failed to exercise informed discretion when it reimposed the firearm enhancements fails.

## DISPOSITION

The judgment is affirmed.